IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JOHNNY LEE NICHOLS                                                                                    PLAINTIFF

v.                          Civil No. 03-5292

SHERIFF STEVE WHITMILL, CORPORAL
MCCARTNEY, SGT. LINDABURY, DANIEL
BAKER, SCOTT HAMMERSLA, and EARL
GOODHEART                                                                                             DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Johnny Lee Nichols brings this pro se civil rights action under 42 U.S.C. § 1983. Nichols contends that his constitutional rights were violated while he was detained at the Washington County Detention Center.

On April 14, 2005, the defendants filed a motion for summary judgment (Doc. 30). By order (Doc. 33) entered on May 6, 2005, Nichols was directed to complete, sign, date, and return an attached questionnaire by June 3, 2005, that would serve as his response to the defendants' motion for summary judgment. When Nichols failed to comply with this order, the court dismissed the action. (Docs. 34-35.) Nichols then filed his response to the summary judgment motion on August 3, 2005 (Doc. 36), and then later filed a motion for relief from judgment (Doc. 37). The court granted this motion (Doc. 39), and the case has been reopened. The defendants' motion for summary judgment is currently before the undersigned for issuance of this report and recommendation.

### I. Background

Nichols was booked into the Washington County Detention Center (WCDC) on

November 6, 2003, on charges of Possession of a Controlled Substance, Possession of Drug Paraphernalia, and on a hold for other agencies. (Doc. 36 at ¶ 1.) Medications of Vistaril, Clonidine, Metapropaol, Propranolol and Triam/Hetz were noted on his intake form, and Nichols indicated on his booking form that he suffered from high blood pressure and identified Propranolol, Clonidine, and Triam/Hetz as the three drugs that he was taking for the high blood pressure. (Doc. 36 at ¶¶ 2-4.) Nichols was offered the medications that had previously been prescribed to him, as they had been prescribed. (Doc. 36 at ¶ 5.)

On November 17, 2003, Nichols requested that Officer Hammersla take his blood pressure. Because Officer Hammersla did not know how to take someone's blood pressure, he requested that Officer Goodheart that Nichols's blood pressure. Goodheart took Nichols's blood pressure at approximately 8:45 p.m. Goodheart took three readings. Two of those readings were 170/120 and one reading was higher. Goodheart returned Nichols to his cell, and instructed him to sit down while he spoke with a supervisor. The supervisors, Sgt. Lindabury and Corporal McCartney did not advise Goodheart to take any action concerning Nichols, and when Goodheart's shift was over, he left for the evening. (Doc. 36 at ¶¶ 7-12.)

Officer Daniel Baker took Nichols's blood pressure reading at 12:20 a.m. on November 18, 2003. At that time, Nichols's blood pressure read 200/119. Baker asked Nichols if he would take two aspirin, and Nichols agreed to take the aspirin. Nichols requested some of his blood pressure medications, but Aleve was all Baker would provide. Baker instructed Nichols that if he felt ill later that night, that Baker would be around every thirty minutes. Nichols did not attempt to contact Baker or any other officer for the remainder of the night because he fell asleep. (Doc. 36 at ¶¶ 13-17.)

During the morning hours of November 18, a jail nurse saw Nichols. The nurse noted that his blood pressure had been reported at 170/120 at 9:00 p.m. on November 17 and 180/118 at 9:05 a.m. on November 18. The nurse directed that Nichols be taken to the Washington Regional Medical Center Emergency Room. (Doc. 36 at ¶¶ 18-20.) The nurse noted on the record that Nichols had been refusing some of his blood pressure medications, but Nichols denies ever refusing medications. (Doc. 36 at ¶ 21.)

Nichols was transported to the emergency room at 9:20 a.m. on November 18, 2003. Upon arrival at the emergency room, Nichols's blood pressure was 180/118, and his pulse rate was 110. Nichols was treated with IV blood pressure medications and released from the emergency room at approximately 12:15 p.m. on November 18, 2003. The treating physician at the emergency room also increased Nichols's blood pressure medications. (Doc. 36 at ¶¶ 22-26.) Nichols also alleges in his addendum that he missed some medications on November 18, 2005. (Doc. 6 at ¶ 7.)

The following day, Nichols was transported to the Arkansas Department of Correction. (Doc. 36 at ¶ 27.) Nichols states that he suffered the injury of his blood pressure being "at stroke level," and that he was charged $5000 for the emergency room visit which he claims could have been avoided had he been given his blood pressure medications by the jailers when he requested them. He agrees that he can present no evidence that this incident resulted in an escalating problem or that he was injured beyond the normal high blood pressure that he suffered with on a chronic basis. (Doc. 36 at ¶¶ 28-31.)

## II. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences

-3-

in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir.1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d 607 *(citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. Discussion

**Deliberate Indifference**

In this case, the plaintiff was a pretrial detainee. Thus, his claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004). "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir. 1999)(citation omitted). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners

under the Eighth Amendment." *Id.* (*quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer,* 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) (analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health

care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

The uncontested facts do not prove deliberate indifference to serious medical needs. When the plaintiff complained about his blood pressure, it was checked on numerous occasions, and the plaintiff was given aspirin or Aleve by Officer Baker to treat the symptoms. Also, after receiving the medication, the plaintiff slept. He was permitted to see medical personnel the next morning, within 12 hours after he first complained about his blood pressure, and he was taken

AO72A
(Rev. 8/82)

to an emergency room for treatment. Plaintiff only claims that instead of aspirin or Aleve, he should have been given his blood pressure medications by the jailers. This is merely a disagreement with the treatment he received, and defendants were not deliberately indifferent to his serious medical needs, especially considering that after he was given the aspirin or Aleve, he began to sleep and did not complain any further that evening to Officer Baker about his blood pressure.

As for plaintiff's claim that he missed some medications on November 18, 2003, that was the day he was treated at the emergency room with IV medications. It is reasonable to assume that he would have received all appropriate blood pressure medications at that time.

**Payment of Hospital Fees**

In his summary judgment response, the plaintiff states that he was charged $5000 for his hospital visit, and that he should not be responsible for these fees because had the jailers given him the medications he requested instead of the aspirin or Aleve, he would not have had to visit the hospital. In his complaint, he attaches a statement indicating that the hospital visit cost $1575.70, and not $5000.

The Constitution only requires that the detaining institution provide basic medical care to inmates, but it does not require that this care be provided at no cost to the inmate. *See Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 245 n.7 (1983) ("Nothing we say here affects any right of a hospital or government entity may have to recover from a detainee the cost of medical services provided to him."); *Blaise v. McKinney*, No. 98-3916, 187 F.3d 640 (8th Cir. 1999) (unpublished per curiam) Therefore, as

the plaintiff received medical care from the emergency room, the detention center met its constitutional requirements to obtain medical care for the plaintiff, and the hospital may hold the plaintiff responsible for the medical bill.

## IV. Conclusion

Therefore, I recommend that the defendants' motion (Doc. 30) for summary judgment be granted and this case be dismissed with prejudice.

**The parties have ten days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely written objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of November 2005.

                                        **/s/ Beverly Stites Jones**
                                        _____
                                        HON. BEVERLY STITES JONES
                                        UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)